[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Application for review of sentence imposed by the Superior Court, Judicial District of New London.
CT Page 6390 William H. Cashman, Esq., Defense Counsel, for Petitioner.
Lawrence J. Tvtla, Esq., Assistant State's Attorney, for the State.
Sentence Affirmed.
BY THE DIVISION:
Following a trial by jury, the petitioner, then 57 years of age, was convicted of three counts of Risk of Injury to a minor child in violation of Connecticut General Statutes § 53-21 and three counts of Sexual Assault in the Fourth Degree in violation of Connecticut General Statutes § 53a-73.
He was sentenced on count one, Risk of Injury to a minor, five years execution suspended after three years, and a fine of $500. On the second count, Sexual Assault the Fourth Degree, one year and a fine of $2,000. On the third count, Sexual Assault in the Fourth Degree, one year and a $2,000 fine; on the fourth count, Risk of Injury to a minor, five years suspended after three years and a fine of $500; on the fifth count, Sexual Assault in the Fourth Degree, one year and a $2,000 fine; on the sixth count, Risk of Injury to a minor, five years' execution suspended after three years and a fine of $500. Each of the six sentences pronounced above were imposed consecutive to each other for a total effective sentence of 18 years, execution suspended after 12 years with fines totaling $7,500.
The factual basis of the arrest is as follows: On June 16, 1994, Waterford police interviewed the mother of a 13-year-old boy. According to the victim's mother on 6/13/94, she returned home at approximately 11:30p. m. and realized her 13 year old son was not at home. She went across the street to 1 Overlook Drive for her son would frequent that house. Her son had become friendly with Albert Nyveldt, age 55, since the separation of the victim's mother and stepfather. The victim's mother entered an open garage door which leads to a recreation room entrance. The victim's mother heard noises coming from inside and knocked on CT Page 6391 the door. Hearing no response she pushed opened the door to look for her son. The offender was physically blocking the door from opening anymore than a few inches. The mother asked if her son was there and Nyveldt replied that he had gone outside to go to the bathroom. The mother then observed her son's sneakers on the floor at which time she pushed the door a few inches further and observed her son partially naked, crouching beneath a pool table in the room. She demanded her son return home immediately while the offender offered no further comment or reason for the incident. The victim told his mother that he had accidentally urinated in his pants. Police interviewed the victim who indicated that on 6/13/94 in the late afternoon the offender called the victim and invited him over to the house. The offender told the victim to come over when the offender got out of work at 9:00 p. m. The victim indicated this had become a regular part of their friendship as the victim's mother was often occupied in the evening. The offender took the victim to McDonald's at approximately 9:30 p. m. and returned to watch television in the house. Initially, the victim told police that he remembered falling asleep on the couch and waking up and feeling all wet, as if he had urinated in his own shorts. The victim indicated that he was in the process of cleaning himself up when his mother came in. The victim further indicated that the offender frequently discussed masturbation with him and introduced a "rubber sheet" in which the offender would have the victim urinate on the sheet and then rub his penis back and forth on the sheet. The victim indicated the offender would be sitting on a bar stool and watch while the victim masturbated. The victim also indicated the offender always tried to kiss him on the lips or pucker and say "give me a kiss." According to the victim the first incident involving masturbation on the rubber sheet occurred in March 1994 in the rear of a truck owned by the offender.
On 6/17/94 the victim contacted police and indicated that he had remembered some things and wanted to talk. The victim indicated that during the incidents when the offender would watch him masturbate the offender was also physically touching him. The offender would sit next to him on the couch and use his hand to digitally masturbate the victim until ejaculation. After, the offender would direct the victim to do the same to him. The victim cited one incident that occurred during May of 1994 while he was visiting the home. He again described each of the parties masturbating one another with their hands. The most recent incident was that of 6/13/94 when his mother interrupted. The victim indicated that the incident involved him being directed to CT Page 6392 again masturbate the offender and being directed by the offender to undress and masturbate on the rubber sheet. It was at this time that the incident was interrupted by the victim's mother. The victim indicated that he was completely naked with the exception of his socks and that is why he was hiding under the pool table.
On 11/9/95 police made contact with the victim to see if there were any further recollections regarding incidents. The victim did state that there were other incidents of sexual contact which occurred throughout the time period winter/spring of 1994 but that the victim could not be specific to the dates, time and locations. In recalling an incident occurring in May 1994 the victim explained that the incident was more involved than he originally stated. The victim told police that the offender told him "suck his dick" at which time the victim did so until the offender ejaculated. The victim further reports that the offender digitally masturbated the victim until he ejaculated. The victim indicated that he did not originally disclose this for he was embarrassed and hoped that this was going to go away.
The defendant plead not guilty to three counts of Risk of Injury to a Minor Male Child and three counts of Sexual Assault in the fourth degree electing a trial to the jury which found him guilty on all counts.
The petitioner claims his sentence is disproportionate and has supplied the Division with his memorandum which includes a list of what he purports to be a summary sheet, from similar crimes with the average sentences of those crimes. Petitioner through counsel has also supplied the Division in his brief with his grounds for sentence reduction. His evaluation contains two separate grounds: 1) The Court Improperly Penalized the Defendantfor Exercising His Right to a Trial and 2) The Sentence WasUnduly Harsh with no Justification.
The petitioner argues in his brief that the trial judge commented in his sentencing remarks that the petitioner was punished for exercising his right to a trial. He further argues in his brief that the sentence was unduly harsh based upon the petitioner's age, lack of prior record and other sentences handed down for crimes of a similar nature.
Petitioner's counsel argued at the hearing that his client CT Page 6393 was watching the thirteen-year-old victim who was voluntarily masturbating in front of the petitioner. He further argued that the petitioner had no prior convictions, worked for Electric Boat for thirty-four years and is the father of two sons. Counsel again mentions in his argument that the trial judge punished the petitioner for exercising his right to a trial. He concludes by requesting the sentence be reduced to three years after time served.
The state's attorney argues that the petitioner intentionally approached the victim at a particularly vulnerable time in his life as also stated by the trial judge. He further argues that the jury found the petitioner lied in his testimony as found by the trial judge. The petitioner had also argued that the trial judge stated that the crimes of the petitioner were innocuous. The state's attorney argues by way of clarification that the trial judge stated they sound innocuous, but are not. The state's attorney concludes that the trial judge did not abuse his discretion in the sentence handed down.
The Review Division is limited to reviewing the appropriateness of a sentence pursuant to Sec. 73-28 of the Connecticut Practice Book.
The petitioner's counsel when arguing that the trial judge punished the petitioner for exercising his right to a trial clearly misconstrued the court's comments. The trial court clearly state's in his sentencing remarks "[a]nd what exacerbates this, that when faced with the charges, he exercised his right to ajury trial, and he will not be punished for that, but in so doing, he forced this young boy to go through his trial again, go through the trial, rather, and relive in front of strangers the conduct which I have described as despicable." (Sentencing transcript p. 17). These are clearly factors that not only may a sentencing judge take into consideration, but clearly that he should.
Petitioner's claim that the sentence is disproportionate to the sentences handed down for similar crimes and is far greater than the average sentences between July 1, 1996 and June 30, 1998, deserves little comment. The trial judge heard the facts of this particular case. It is clear from the court's extensive remarks at sentencing that he gave consideration to the gravity of the offense and the possible long-term effects that these residents may have on a thirteen-year-old victim. The court CT Page 6394 looked at the petitioner's lack of a prior record, lack of remorse and his persistence to blame the victim rather than accept responsibility for his acts.
Protection of the public interest is also a necessary consideration in determining the appropriateness of a sentence.
Having reviewed this sentence as provided by the Practice Book, we find the sentence to be neither inappropriate nor disproportionate and we affirm it.
Iannotti, J.
Klaczak, J.
O'Keefe, J.
Iannotti, Klaczak and O'Keefe, J's. participated in this decision.